The next case this morning is Ohio Security v. Rasler Plumbing et al. We have Mr. Cassidy and Mr. Colker. Mr. Cassidy, please proceed. Good morning. May it please the Court and Counsel, my name is Chris Cassidy. I am from the law firm of Counsel and Stalker Charter and I'm here to represent Ohio Insurance Security Ohio Security Insurance Company, a plaintiff-appellant contender in this case. This is an appeal exclusively about discovery issues. It's an appeal about 31 pages of withheld discovery. And when I say withheld discovery, I'm not talking about 31 documents. I'm talking literally about 31 pages of documents. These are single sheets of paper. They were letters that were written by counsel that Ohio assigned to represent Rasler Plumbing in a workers' compensation case before the Illinois Workers' Compensation Commission. Just to be sure, are they contained in the record? It looks like a D-161 and it's described as Kevin Leahy Materials Correspondence? No, Your Honor. I believe that reference is in the Privilege Law. Privilege Law. I do have the documents with me and that was a question I was going to ask the Court. To make things simple, I could actually file these under seal to have the Court look at those documents, to have the in-camera inspection. You should make a motion on that, and we would have to decide that it wasn't before the trial court. And we would both have to, each side would have to look at that and whether the appellate court could do it at this stage. But if you wish to make that motion, you can, but we would not rule on it at this time. Now, this Privilege Law, what is that describing? That's describing all the documents that we actually produced between 2007 and 2010. It also lists the documents that we did not produce, the ones we consider Privilege Law. Does this describe the documents you did not produce? Yes, it does. Okay, so you go ahead. Could I actually ask for some clarification? Sure. If I do make that motion, how does that work today? I have the documents with me, I have the motion. Unless the two of you want to agree on these being submitted in-camera, we would take the motion under advisement and allow a written response. Did you hear his motion? Do you want to? You don't have to decide right now. But he can't argue if it's not before. No, we don't have the documents right. Do you want to say anything? My gut reaction is to go ahead and submit it then. Although I think I would still, because it's a public proceeding, I'm not sure that's proper. Well, what we're going to do, you can argue how you've described them in the law, okay, which is fairly descriptive. And then, if you wish, you file a motion asking that we inspect them in-camera and see if we get an objection. Okay. How much time would we have to do that after the argument? Ten days. Ten days, okay. Thank you for clarifying that, because that was a question I was going to have to answer. We don't get a lot of motions, so I appreciate you asking me to clarify. I just wanted to bring it because I wanted to bring the documents with me just in case that did come up. I'm glad you did. Because they weren't in the record. I'm glad you did. It will make an interesting point. But you go ahead. I'm going to use up all your time. All right. It actually goes to the second part of our argument, which is the work-product privilege, if I can get that out, because the work-product privilege actually deals with substance and content. And the Bonn Case Report never actually had a chance to look at the content of the documents that we're talking about. And that's why we wanted to present them to the court under seal, so that you would actually have that chance to look at those documents and make the determination that the Bonn Case Report did not. The Bonn Case Report made the decision. You can put that in your motion now. Okay. Okay. All right. Go ahead. Oh, sorry. They did this in the abstract. They sort of characterized the documents as being part of the client's files, and they characterized the client as being Rassler Plumbing. Well, that's true. We assigned Kevin Leahy, the attorney, to represent Rassler Plumbing before the Illinois Workers' Compensation Commission, but there were no documents that were produced to Rassler Plumbing, because at the time he was doing his representation, the company was defunct. I don't know if you remember, but this is the second time the case has been before the court. The first time it was before a summary judgment motion was several years ago, and it was 2007. This stemmed from a horrible accident involving an excavation where Randy Rassler lost his life along with one of his plumbing assistants. And his wife filed for widow's benefits before the Illinois Workers' Compensation Commission, and we assigned Kevin Leahy to work on that file. He never actually got a chance to work on the file. He didn't get proper notice of what didn't attend the November 1, 2005 hearing or the arbitration hearing. And so his entire association with the file has been after the fact. He's been trying to, for the year after he tried to open the record to get the point of view of his assigned client, Rassler Plumbing, onto the record. Let's get that straight right now. Okay. Now, the arbitrator ruled against you on the issue of notice. The commission affirmed it. Did you appeal it to the circuit court? No. It is a final decision, is it not? Correct. So you got adequate notice? Correct. Okay. All right. Thank you, Mr. Governor. Well, having notice, he still did not participate at the hearing. And so his efforts after that were only in an attempt to reopen the record, to get that on the record, what Rassler Plumbing's point of view was. And the documents, he didn't really have a client to send the documents to. Because of the circumstances of the accident, Rassler Plumbing itself only consisted of three people. Randy Rassler, his plumbing assistant, Vernon Sarver, and Beverly Rassler. With the accident killing both Randy Rassler and Vernon Sarver, the only person that was left as a human being at Rassler Plumbing was Beverly Rassler, who was the opponent. So she's the adversary against his assigned client. And he couldn't really send copies of those documents to Rassler Plumbing because it would be revealing the litigation plans and strategies to the opponent in the workers' compensation case. So what we state is that we have two issues, one with the attorney-client privilege. We would state that at the time the letters were written, the court should not ignore the fact that Beverly Rassler was the opponent of Rassler Plumbing at the time that those were written. She was the adversary, and to produce those documents to the company would be to produce them to the opponent that he was trying to defend against. Secondly, in the year following, midway through his attempt to open that record, Beverly Rassler filed an attorney disciplinary registration complaint against Kevin Leahy to try to get him off the case. She expressed very publicly and very embarrassingly the fact that she did not want Kevin Leahy involved in the litigation. So she actually disavowed the same attorney-client relationship that she's trying to exploit at this time to get access to documents that she should not have access to. So those are the two points that we've made under the... In this litigation, is Rassler Plumbing involved as a party? It is involved as a party. And are they requesting these documents? They're requesting these documents, but it's Beverly Rassler as Rassler Plumbing. So it's actually both combined together, their views. The Workman's Compensation case is over with. Correct. But the attorney, Mr. Leahy, prepared these documents in his representation of Rassler Plumbing, and now Rassler Plumbing is asking to look at them. Isn't that a fair statement? Correct. And at the time that they were done, isn't it your position that the insurance company and Rassler Plumbing were on the same side? Initially, right. When these documents were produced. They were the insurance. So they had an identity of interest. What I would state is that there's a difference between Rassler Plumbing that was at the Worker's Compensation Commission and the one that's actually requesting the documents now. Now it's Beverly Rassler in the guise of her husband's former business. But at the time he produced them, they were on the same page. I mean, the sign he created these documents and exchanged them with the insurance company, they were on the same page. They were, but there was no corporation that he could consult with. Okay. With that being said, I realize that there's an issue surrounding the attorney-client privilege. But with the Work Product Doctrine, these documents contain the litigation strategy and the mental impressions and opinions of the attorney, and they should not be turned over to the opponent in that underlying case. Who would they turn them over to? They would be turned over to Beverly Rassler as Rassler Plumbing. Isn't that what she wanted? Excuse me, Your Honor? Isn't that what she wanted? Well, she's the adversary in the underlying case. I mean, somebody's got to get them for Rassler Plumbing. Well, these documents, there's no one else. That's the problem. And if you turn them over to that side, it's the adversary in the proceedings. She gets the trial preparation outline from their opposing counsel. She gets documents that alone, without being the claimant against the corporation, she could not ordinarily receive. So are you saying there should be some special administrator of Randy Rassler that gets it? Who gets it? That's my question. We don't think anyone gets it. Nobody gets it. No one gets it, because at this point, the only person that's left that you can produce these documents to is Beverly Rassler, and that would be damaging. It would give them the documents that she should not be entitled to, which is the mental impressions and the subjective advisory opinion of the attorney that was supposed to represent Rassler Plumbing. If those documents are turned over, the last vestiges of whatever defense Kevin Leahy was attempting to provide would be over. The entire game, the entire defense would be over. It is over. The workman's comp case is over. They did receive it. Now, this is a declaratory action to see if there's any insurance to cover it. Isn't that correct? Correct. Well, isn't Rassler now your adversary in the declaratory judgment? Correct. They weren't in the workman's comp case. No. And these were produced during the workman's comp. So are you saying there isn't an attorney-client privilege problem here and it's all work product? So we can narrow this down. We can narrow it down. Okay. I mean, that's okay. And we're at work product. Correct. Okay. And because that's a broader privilege on the attorney-client, because there is that issue as to who you do produce the documents to with the attorney-client, with work product doctrine, they're absolutely privileged if they contain the medical questions, opinions, and trial strategy of the attorney. In this case, these are what these letters are. They're letters to Ohio stating what he was going to do to reopen the record. And we would state that because they have the subjective advisory opinions of Kevin Leahy as to what he would state to Rassler Plumbing if there was a corporation that he could speak to, that they should be absolutely privileged and should not be turned over to Barry Rassler, the opposing counsel. How could that affect the declaratory judgment, what he was going to do in the workman's comp case? I mean, I don't know how the work product in the workman's comp case can affect the declaratory judgment. Does he ever represent the insurance company in the declaratory judgment? Kevin Leahy? Yes. No. So it's work product in a case he wasn't representing a client in. Is that it? Can you repeat that one more time, Your Honor? He wasn't. He's never represented your client in the declaratory judgment. No, he didn't. No. Then how is it work product in this case? It's work product in the fact that there are documents. I believe that when you look at these documents, it needs to be at the time they were created, not the time they were turned over. The time these were created, Kevin Leahy was the assigned counsel, and he was supposedly representing a defunct corporation whose only member was Beverly Rassler. To turn them over would have been to turn the documents over to the adversary that preceded. But we're not talking about turning them over then. We're talking about turning them over now. How can his work product in the workman's comp case be work product in the declaratory judgment action? It did exist at that time, didn't it? It ran parallel to the workman's comp, the declaratory judgment. It did. And there was separate counsel for your client for the declaratory judgment. Correct. Do you see what I'm trying to ask? How can you transfer this work product over to somebody who wasn't even his client for that purpose? Honestly, no, Your Honor. I'm not seeing your point. Okay, go on then. I apologize. No, you go ahead. I just – it's our position that because this is a broader privilege and that the documents – to turn the documents over at this point would be actually a problem in the declaratory judgment case because the declaratory judgment itself as to whether or not the policy itself applied, that's not even decided. That was the previous appeal. Right. In this situation, we're talking about a counterclaim. A counterclaim is stating that we acted in bad faith. We don't have to act in bad faith. What the documents are supposed to show, but they do not, is that Kevin Leahy was working against the interests of his client at the time that he was representing them because he didn't actually speak to someone at Rassler Plumbing because the only person who was there that you could speak to was Beverly Rassler. And what I'm saying is it's an impossibility for him to actually respond to anyone there because the only person that was alive left at the time he was trying to reopen the record was Beverly Rassler, his opponent. And I would state that because there is this problem as to whether or not the attorney client privilege is there, whether the workers' work product privilege actually takes place, the court said that this was sort of a sticky issue. It was on the edge. And that's why we actually held ourselves in contempt over this issue. We asked that we wanted to step up and have the appellate court take a look at the same privilege issue. Are you conceding that attorney client privilege is no longer an issue in this appeal? Yes, sir. Okay. Because the work product is actually wrong. Got it. And I think that that's the one we should have. Okay. I would ask that the contempt proceeding, because we did do this non-condemnation, that we did have an issue here as to whether who we were supposed to send these documents to or who we were supposed to turn those over, that that be vacated, that the fees actually be vacated, and that the court look at the privileges themselves and reverse the findings of the appellate court. Let me ask you this. Now, Beverly Rassler was considered as the representative of Rassler Plumbing both in the workman's comp case and in the declaratory judgment action. Not correct? In the workman's compensation, she was the claimant against Rassler Plumbing. Right. That's right. And that's the problem because she was the adversary. To turn the documents over to the only person who existed at Rassler Plumbing would be to turn them over to Beverly Rassler. That's right. The court actually said, the Bombay Circuit Court in the October 28, 2009 situation said that they didn't have any case law that was directly on point with this particular issue because it's so unique. We don't usually have a situation where the entire corporation is decimated and you leave just the claimant against the corporation as the representative who you would send those documents to. So we would ask that the finding of the underlying court be reversed. Thank you. Mr. Coker. Your Honors, may I please report? Mr. Cassidy and I apologize. I'm recovering from one of those holiday flus. They're in my throat. I don't know why. Happy New Year. My name is Chris Coker. To my right is Jim Mazur, who's assisted with this case as well. There's only one part of the underlying workman's comp case I want to bring up because it's relevant to the bad faith case that's filed now. And that is that Kevin Leahy, when he entered his appearance in that underlying case, the only thing he did is file motions to vacate the award in order to defeat insurance coverage for his own client. The rest were fine. That was the thrust of everything he did in the underlying case. I don't think it takes much imagination to figure out if you're filing motions to vacate coverage for your own client, you're being adverse to your own client. And we contend that he was instructed by Ohio Casualty and worked with Ohio Casualty in order to be adverse to his own client, to Rasslin's client, in bad faith. With that being said, it's true that the declaratory judgment part of this has already been up and decided. There's coverage. The exclusion, the death exclusion sometime throughout this was forged by what is now an admitted agent of Ohio Casualty. But in April of 2008, almost three years ago, we filed a discovered request. And we filed a discovered request asking for the documentation, the letters that Kevin Leahy, the attorney, sent to Ohio Casualty and back. And we got no response. The response we got were those bed sheet objections. I'm sure you've all seen them. They list every possible objection from relevancy and everything else. And as the record shows, we made a 201K call to try and get some resolution, and none happened. In July of 2008, we filed a motion to compel. And that motion was granted in standing. But what's important with that first motion is no motion to vacate the file. The court ordered these documents and other things to be produced, and nothing happened. As I say, you may not like, and I know there are a lot of court orders I haven't liked in my legal career, but I know I still have to follow them. I wish I had the stature and whatever to not follow court orders, but OSI didn't. Ohio Casualty didn't. So we had to file another motion to compel. And that was filed in August of 2008. We had a hearing on that in October of 2008. And at that hearing, as the record reflects, Ohio Casualty said, hey, we can't find these documents. You know, there's this confusion where they are and all that. And the trial court, in its leniency, said, oh, I'm going to give you some time to look at these. Get them together and produce them. They're still not produced. And in fact, Ohio Casualty files more objections and states, hey, if we get a protective order, we will produce these Leahy documents. In March of 2009, trial court grants a protective order. And again, orders these documents now for the third time to be produced within 14 days. Again, no motion to vacate that order is filed. It's just ignored. But nothing happens. And at this point in time, it gets rather frustrating for the appellee here. So we file another motion to compel and a motion for sanctions. The same arguments are presented. And in October of 2009, the court again orders, showing a lot of leniency. Judge King showed a lot of restraints and produced the documents within 14 days. There's no motion to vacate the file. Instead, there's just this complete ignoring of the trial court orders. When did this request for in camera? Was that like two years after the workman's comp? Correct. Did that ever happen? Well, it was through the request. So no. And actually, it happened, Your Honor. What happens is, of course, no documents are still produced. So in December of 2009, we file another motion to compel, another motion for sanctions. And then in February and March, the court finds them in contempt. Orders the 219 sanctions. After four court orders were ignored. Ignored. And then, after that was heard, Ohio Academy comes in and says, Okay, how about we do an in camera inspection? And the trial court says, They do agree. The trial court says, sure, we'll do an in camera inspection. But if they're not privileged, they can share. And Ohio Academy says, well, forget it. We don't want an in camera inspection. So they withdrew the request. But what this case is about is the ability, and I just don't even have the guts to do it. I don't understand how you can ignore four court orders requiring production. And expect to then come in two years later, you know, now three years later, and attack the process of the trial court for all these different reasons. I thought the trial court should have struck with pleadings after ignoring four previous orders, as opposed to the sanctions that they did here. I want to point out that then this appeal was initiated. And in the briefs, we contend the standard of review is abuse of discretion. There are some cases that talk about statutory privileges that Ohio Academy points out, where there is this standard of review of de novo. Because this is a discovery issue, though, it makes a lot more sense to follow the Fifth District's previous rulings that it's abuse of discretion. I point out about five reasons why these documents clearly have to be produced. The easiest is you can't just ignore four previous court orders. How about the waste management case, the Supreme Court case? The waste management case and the Western States cases are nearly identical to what we have here. The court rules in both of those that when you have this commonality of interest that Judge Donovan, Justice Donovan alluded to before, that there is no privilege and there is no work product. Even if there is a subsequent adversarial proceeding like the one we have today. And the classic example of that is the auto accident bad faith case. I'm sure this Court has seen those. The old Gallup cases are the most discreet. Where the attorney, the underlying attorney, has correspondence with the insurance company that says, hey, screw the insurer, only look out for the insurance company's interest, or what have you. But when the bad faith case starts, and there's the assignment, all of that privilege goes away because that attorney represented the insurer. So in the waste management in the Western States, they point out when you have that commonality of interest, there is no privilege and there is no work product. Similarly, both of those cases also talk about the second exception, the at issue exception. When the attorney's conduct is at issue, then there is no privilege or work product. Here, clearly, it's at issue. We've alleged that he was instructed that correspondence corresponded with Ohio cash would be adverse. That's part of the bad faith case. So there's an at issue exception that also defeats work product. I point out another reason why work product is defeated is because there's no other way for us to get the materials. I mean, Ohio cash, we suggest, well, we could see a lady and all that, but we know that, to be honest, we've actually sent requests and he's refused to abide by them. It's not a record. You know, Your Honor, I don't believe it is. I walked away from it. But the biggest reason, again, is that parties have to follow the court orders. We can't simply ignore discovery issues and drag them out for years to come. The message that the trial court does not affirm here is that litigants can go ahead and just willfully and consummationistly ignore court orders on discovery, drag out these processes for years. And this case is now going on six years. Two of them, two, three of those years now, wrapped up in a simple discovery dispute. So, again, I would ask the trial court that the lease be affirmed and the sanctions exempted. Do you agree also that there was an identity of interest between Rassler and the insurance company at the time? Absolutely, Your Honor. Thank you. Any rebuttal? I'd just like to make a couple of quick points. We were talking about how he supposedly did not follow court orders to compel. It actually didn't occur that way. The initial motion to compel that occurred in, I believe it was July 8th of 2007, it was sent to the court, and the same day that the court received it, they signed the order that day. Ohio never got a chance to actually respond to the order. It didn't know the order was out there. We didn't know that we were generally compelled to produce these documents. We started behind the eight ball. Over the next couple of years, this long discovery period that Mr. Kolker discussed, what he neglects to state is that we were purchased by Liberty Mutual, the Liberty Mutual Group, a much larger insurance company. All of the local branch offices in Illinois were dismantled with the documents that had been archived, sent physically in banker's boxes to other states. So we were trying to get the documents through Liberty Mutual, who's based in Boston, Massachusetts, who's trying to locate documents that are in a warehouse in either Wisconsin... Why didn't you call Mr. Leahy and ask him for it? He was your employee. There were more documents than just the Leahy documents at the time. Well, the 31 we're concerned with were in his hands, weren't they? They were. Okay. So it's not that we... We didn't continuously ignore these orders. We just... We didn't have the documents because we had been purchased by another corporation. And as for the ad issue exception to the work product rule, the ad issue exception states that... Just a second. The ad issue permits discovery of work products where the sought-after material is either the basis of the lawsuit or the defense thereof. In this situation, we're not talking about a defamation suit or a libel or a slander suit. The case doesn't arise from these letters. It arises from the representation. The letters aren't the representation. These are letters that were written from Leahy to his client that involve the representation that he was attempting to give to Rouster Plummet. So these issues aren't... These documents, these 31 pages, are not ad issues, so that exception does not apply. Is it your position that in a bad faith case, which is what we're dealing with now, that correspondence between the retained attorney by the insurance company and the insurance company would not be discoverable? No, no, that's not... It's just the unique circumstances of this case. Right. Normally it would be. Right. But in this circumstance, because there's no one at the corporation left except the claimant against the corporation, to turn those documents over would be to give up the game, basically, to give up everything. The entire defense would be over. Now, in the standard of review, you say it's de novo with regards to privilege, which is no longer an issue. Privilege succeeded. What's the standard... Excuse me. Go ahead. Client privilege, but not for work. For product privilege, and you say that's de novo. Correct. Is it abuse of discretion on the amount of the sanction? I would say yes, Your Honor. We would ask that you just reverse the finding of contempt and that the findings as to the privilege be reversed as well. Okay, and if you do decide to file a motion, you're also allowed to file a five-page legal memorandum if you wish, and then within 10 days after that, can you respond? And you can file a five-page legal memorandum also. Don't make the motion 40 pages long. Thank you. Thanks to both of you for your...